ELLEN K. WOLF (Bar No. 110686)
ewolf@wolfgroupla.com
CHRISTOPHER B. GOOD (Bar No. 232722)
cgood@wolfgroupla.com
WOLF GROUP L.A.
11400 West Olympic Boulevard
Suite 200
Los Angeles, California 90064
Telephone: (310) 460-3528
Facsimile: (310) 457-9087

Attorneys for Plaintiffs and Counter-Defendants-In-Interpleader
AMY ALCINI, CHRISTOPHER COLE, KATY COLE and JONATHAN COLE

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY ALCINI, an Individual, CHRISTOPHER COLE, an Individual, KATY COLE, an Individual and JONATHAN COLE, an Individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin corporation, and DOES 1-100, Inclusive<br><br>Defendants.<br><br>THE NORTHWESTERN MUTUAL LIFE INSURANCE, COMPANY, a Wisconsin Corporation,<br><br>Counter-Plaintiff-in-Interpleader<br><br>vs,<br><br>AMY ALCINI an Individual, CHRISTOPHER COLE, an Individual, KATY COLE, an Individual and JONATHAN COLE, an Individual and RYAN LANGDON, an Individual, and ROES 1 - 10, Inclusive<br><br>Counter-Defendants-in-Interpleader. | CASE NO.: 08-02889-VBF (AJWx)<br><br>REVISED OPPOSITION TO DEFENDANT NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: September 8, 2008<br>Time 2:00 p.m.<br>Courtroom: 9<br><br>[Filed concurrently with Revised Declaration of Ellen K. Wolf in support thereof, Declaration of Kristin Manning in support thereof]<br><br>[Genuine Issues of Material Facts, Request for Judicial Notice of Motion for Partial Summary Judgment Filed by Plaintiffs, including the Original Signed Declarations of Jacquelyn Damarjian, Melissa Carrasco and Dr. Johnny K. Chang and Declaration of Kristin Manning previously filed in support thereof] |

REVISED OPPOSITION TO DEFENDANT NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................... 1

II. STATEMENT OF FACTS ..................................................................................... 2

III. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT ....................... 5

IV. LEGAL ARGUMENT ........................................................................................... 6

   A. THERE IS AMPLE EVIDENCE TO SHOW THAT NORTHWESTERN DID NOT ACT REASONABLY AND/OR IN GOOD FAITH IN HANDLING THE DISTRIBUTION OF THE POLICY, THEREBY BREACHING THE CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING ............................................ 6

      1. THERE IS AMPLE EVIDENCE REFLECTING ISSUES OF MATERIAL FACT REGARDING NORTHWESTERN MUTUAL'S BREACH OF THE CONTRACT WITH PLAINTIFFS ........................................................................................... 7

         a. *Maddux* is Factually Inapt and Is Not Instructive to This Situation Because The Competing Claims in *Maddux* Were Based on Legal Issues Regarding Divorced Spouses, and Other Interpretation of Specific Policy Terms. *Maddux* Does Not Relieve the Insurer from Investigating the Validity of the Competing Claims. ....... 8

         b. Northwestern Never Investigated the "Competing" Claims ............................ 10

         c. Northwestern Mutual Ignored All the Direct Evidence Provided By Plaintiffs To Support the Claim And Never Attempted to Correct or Resolve the Blatant Errors And Omissions It Made .................................................................... 11

         d. Northwestern Destroyed Cole's Original Signature Within Days of the Change of Beneficiary and Most Likely After It had Notice of Langdon's Dispute About the Legitimacy of the Change in Beneficiary Form. .................................................. 12

         e. In Spite of Admitting That Plaintiffs are the Beneficiaries, Defendant Northwestern Mutual Has Not Paid the Benefits to the Beneficiaries Under the Policy. ............. 13

   B. BY NORTHWESTERN MUTUAL'S CONDUCT AS DESCRIBED ABOVE, THERE IS AMPLE EVIDENCE SUPPORTING ISSUES OF MATERIAL FACT REGARDING WHETHER NORTHWESTERN MUTUAL HAS BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING ........................................... 13

V. CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ................................................. 5

*Clicks Billiards, Inc. v. Sixshooters, Inc*, 251 F.3d 1252, 1257 (9th Cir. 2001) ................ 6

*Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 819 (1979) ........................................... 7

*Maddux v. Philadelphia Life Ins. Co.*, 77 F. Supp. 2d 1123 (S.D. Cal. 1999) .................... 7

*Schwartz v. State Farm Fire and Cas. Co.*, 88 Cal.App.4th 1329, 1335 (2001) .............. 12

**STATUTES**
Fed. R.Civ.P. 56 ..................................................................................................................... 5

Plaintiffs AMY ALCINI, CHRISTOPHER COLE, KATY COLE and JONATHAN COLE ("Plaintiffs" or the "Plaintiffs and Counter-Defendants-in-Interpleader") hereby submit their Opposition to Defendant Northwestern Life Insurance Company's ("Defendant" or "Northwestern Mutual") Motion for Partial Summary Judgment.

## I.

## PRELIMINARY STATEMENT

Defendant Northwestern Mutual's conduct in handling the life insurance policy of Kay Cole was neither reasonable nor in good faith, and was a direct breach of the contract and the covenant of good faith and fair dealing with the beneficiaries of the policy, the Plaintiffs. Interpleader does not absolve the insurer for breach of contract or unreasonable conduct that preceded the interpleader, and especially here where a) the impetus for the competing claim of Ryan Langdon ("Langdon") was incorrect information given by Northwestern to the former beneficiary when she called Northwestern Mutual less than 24 hours after the decedent died and thereafter, b) Northwestern would neither acknowledge the clearly faulty factual basis of Langdon's claim—which they themselves caused—nor investigate or assess the clear facts proving Plaintiffs' valid claim, and c) Northwestern destroyed the original Beneficiary Designation form that Langdon was disputing, within days or weeks after receiving it and after the dispute arose.

The claims of the former beneficiary, Ryan Langdon occurred in large part because Northwestern Mutual mishandled the policy administration and inquiries by Langdon as to who the beneficiaries were after Kay Cole's death, and when the beneficiaries had been changed. Northwestern first told Langdon she was still the beneficiary on the day after Cole's death, and then sent a letter indicating the beneficiary designation had been changed six weeks prior, and then later indicated the beneficiary change had been made after Cole's death, which resulted in

1

REVISED OPPOSITION TO DEFENDANT NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Langdon's letter to Northwestern alleging "fraud" or "criminal activity" in the beneficiary change process. Northwestern knew the correct facts and never corrected them, never acknowledged them, and certainly never resolved them.

Moreover, even against this backdrop, Northwestern Mutual was unwilling to consider any of Plaintiffs' factual information or make any investigation of the alleged "competing" claims subsequent to creating the issues between the Plaintiffs and Langdon which has necessitated the filing of this lawsuit.

And, in the *coup de gras*, Northwestern apparently destroyed the original document after Langdon questioned it, which Plaintiffs' counsel learned when Langdon indicated she might withdraw her claim if she could examine the original. Upon calling Northwestern to arrange physical inspection of the original document, Plaintiffs' counsel learned that the document had, in fact, been destroyed.

Now, after stirring the proverbial hornets' nest, Northwestern Mutual is requesting the court to absolve it from all of its misconduct based on the interpleading of the subject funds with the Court, after the fact. There are and remain substantial issues of material fact as to whether Northwestern Mutual's handling of the claim, failures in investigating the claim, refusal to pay proper benefits under the claim to the rightful beneficiaries and destroying of original documents for the claim, specifically the deceased's original signature on for the change of beneficiary form, are breaches of its duties under the contract and its implied contractual obligations. Even though Northwestern chose to ignore these issues in its filing of the motion for summary judgment, these facts and issues exist and as such summary judgment as to Northwestern Mutual is inappropriate.

## II.

## STATEMENT OF FACTS

Kay Cole was the owner and insured under Northwestern Mutual Life Insurance, Policy Number 16581041 ("Policy"). (Northwestern Mutual's Statement

of Undisputed Fact "SUF" 1). On February 13, 2008, Cole designated as beneficiaries of the policy Plaintiffs Amy Alcini, Christopher Cole, Katy Cole and Jonathan Cole. (SUF 3). Cole did so at her own initiative, after meeting with her doctors in preparation for surgery that was scheduled to occur the following day. (Plaintiffs' Genuine Issue of Material Facts "PGI" 17). On that same day, Cole contacted Northwestern to request the change of beneficiary form from Melissa Carrasco, a Northwestern Mutual employee. (PGI 18, 19). Melissa Carrasco emailed the Beneficiary Designation form on February 13, 2008 upon the request. (PGI 18, 19).

Cole executed the Beneficiary Designation form which designated Plaintiffs as beneficiaries in place of the previous beneficiary, Ryan Langdon ("Langdon"). (SUF 2, 3; PGI 19). Cole caused her assistant, Jacquelyn Damarjian, to return the completed change of beneficiary form by fax and mailed the original to Northwestern Mutual on February 13, 2008. (PGI 20) Northwestern Mutuals' Melissa Carrasco confirmed by phone that the faxed change of beneficiary form was received by Defendants on February 13, 2008. (PGI 21). Northwestern Mutual has confirmed that Cole changed her beneficiary designation on that same date, February 13, 2008. (SUF 3, PGI 21).

The original signed beneficiary designation form was received by Northwestern Mutual via mail on February 18, 2008. (SUF 3; PGI 22). Cole died on February 19, 2008. (SUF 4). Very shortly thereafter, Langdon contacted Northwestern Mutual and was told by the agent of record that she, Landgon, was the beneficiary of record. (SUF 5; PGI 23). The information provided by Northwestern Mutual to Langdon was false. (SUF 3,5; PGI 23). Thereafter, on February 21, 2008, Northwestern Mutual sent a letter to Cole stating that her change of beneficiary was effective as of January 12, 2008. (SUF 3,5; PGI 24). Again, this information provided by Northwestern Mutual was false. (SUF 3,5; PGI 24). This letter was

intercepted by Langdon and again raised suspicions of Langdon as to the validity of the change of beneficiary. (SUF 6). Langdon again called Northwestern and was reportedly told that the beneficiary was changed on a date late in February, by which time Kay Cole was already deceased. (PGI 25). Based on the conflicting information that was provided to Langdon by Northwestern, Langdon made a challenge to the claim with Northwestern Mutual, claiming the beneficiary change to be "fraudulent" and/or under "duress". (SUF 5,6).

In response to the dispute of the claim by Langdon, Plaintiffs corresponded with Northwestern Mutual and provided information to confirm the validity of the form and Cole's competency at the time of her signing of the change of beneficiary form. (SUF 7,8,9; PGI 26). This information included e-mail and fax transmissions between Northwestern Mutual employees and Cole, the patient hospital records for Kay Cole detailing her well-being and various contact and examinations on, before and after February 13, 2008. Additionally, contact information was provided for not only the Northwestern Mutual employee that Cole talked to on February 13, 2008, but also the assistant who coordinated transmittal of the form, the doctors who were monitoring Cole from February $1^{st} - 19^{th}$, 2008 and the daytime as well as the nighttime nurses who monitored Cole from February $1^{st} - 19^{th}$, 2008. (SUF 7,8,9; PGI 27).

Plaintiffs also noted to Northwestern Mutual that Langdon and Cole, once co-habitants, had not been together for more than four years, that Cole was engaged to Plaintiff Amy Alcini when she died, and that Cole had left a separate $500,000 insurance policy to Langdon, apparently to cover any of the "financial" issues that Langdon raised in her correspondence to Northwestern. Plaintiffs told Northwestern Mutual that any further documentation or information needed would be provided. (SUF 9; PGI 28).

In spite of this information, Northwestern Mutual did not investigate the

4

REVISED OPPOSITION TO DEFENDANT NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

claim, repeatedly stating that they would not make any assessment of the relative merits of the claims. Plaintiffs' counsel called Northwestern Mutual repeatedly and was told the same thing – "nothing could be done." Northwestern Mutual never corrected/resolved the false information that it provided to Langdon. (SUF 7,8,9,10,11; PGI 29, 30)

Moreover, in April, after Langdon's counsel told Plaintiffs' counsel Langdon perhaps would withdraw her claim to the money upon examination of the original signature on the Beneficiary Designation form, Northwestern Mutual advised Plaintiffs' counsel that the original Beneficiary Designation form had been destroyed by Northwestern Mutual. (PGI 31,32). So at a time when Northwestern Mutual knew of the problem, and knew of Langdon's challenge, Northwestern destroyed the original document. (SUF 5,6; PGI 31,32).

So Northwestern Mutual gave false information and wrong dates of the beneficiary change to Langdon, both orally and in writing, refused to consider any of the clear facts provided by Plaintiffs, and then destroyed the original document at issue. In fact, only in its interpleader counter claim did Northwestern Mutual confirm that Plaintiffs are the Beneficiary of Record, and yet still Northwestern Mutual did not put in its interpleader complaint the operative dates that would have shown the true facts. Northwestern Mutual has unreasonably administered the policy, been a major causal factor in Langdon's pursuit of a baseless claim, and has unjustifiably refused to pay the proceeds of the policy to Plaintiffs as required. (Northwestern MSJ pg. 3:19-20)

### III.

### STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

For the purposes of summary judgment, the moving party bears the burden of proving the absence of a genuine issue of a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R.Civ.P. 56. A genuine issue of

fact is one that could reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. Moreover, in the summary judgment context, we construe all facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 248 (all justifiable inferences are to be drawn in favor of the nonmovant); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001)

## IV.
## LEGAL ARGUMENT

**A. THERE IS AMPLE EVIDENCE TO SHOW THAT NORTHWESTERN DID NOT ACT REASONABLY AND/OR IN GOOD FAITH IN HANDLING THE DISTRIBUTION OF THE POLICY, THEREBY BREACHING THE CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING**

Northwestern Mutual claims that no issue of material fact exists as to whether they "maintained a good faith belief that either group of claimants might legitimately be entitled to the proceeds" thereby making the interpleading of the funds appropriate. MSJ pg. 7:1-3. However, as Northwestern Mutual itself stated, when faced with demands from both sides to pay on the policy "on multiple occasions, Northwestern Mutual told Plaintiffs that it was not in the position to determine the validity of the change of beneficiary form or Deceased's competency at that time, and that given conflicting claims to the death benefits at issue, it could not release the insurance proceeds to anyone." MSJ pg. 4:9-14. When presented with evidence by Plaintiffs, including affidavits and medical records along with a writing sample of the deceased near the time of her passing, Northwestern Mutual turned a blind eye again stating that without an agreement with Langdon, there was nothing they could do. In fact, Northwestern Mutual informed the Plaintiffs that they should try and come to an agreement with Langdon, never once indicating that

as the insurer Northwestern Mutual would investigate the claim, which clearly they did not. ///

"An insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim" *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 817 (1979). An insurer must investigate a claim thoroughly. *Love v. Fire Ins. Claim*, 221 Cal. App. 3rd 1136, 1148 (1990). The covenant of good faith and fair dealing "'is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.' The 'precise nature and extent of the duty imposed by [the] implied promise will depend on the contractual purposes.' And, to fulfill its obligation not to impair the insured's right to receive the benefits of the agreement, the insurer "must give at least as much consideration to the [insured's] interests as it does to its own." (internal citations omitted) *Schwartz v. State Farm Fire and Cas. Co.* 88 Cal.App.4th 1329 1336 (2001).

In this matter, it is clear that Northwestern Mutual did not investigate, let alone "properly" or "thoroughly" investigate the claim of the Beneficiaries as against the claim of Langdon. As such, and in violation of its duties, Northwestern Mutual did not act reasonably and/or in good faith in the handling of the distribution of the policy as by its very conduct, it is abundantly clear that Northwestern Mutual gave no consideration to the Beneficiaries' interest.

///

1. **THERE IS AMPLE EVIDENCE REFLECTING ISSUES OF MATERIAL FACT REGARDING NORTHWESTERN MUTUAL'S BREACH OF THE CONTRACT WITH PLAINTIFFS**

"It is essential that an insurer fully inquire into possible bases that might support the insured's claim. Although we recognize that distinguishing fraudulent from legitimate claims may occasionally be difficult for insurers .... an insurer

cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 819 (1979).

Such a failure to even examine and investigate the evidence and information provided by Plaintiffs or examine and investigate the validity of Langdon's competing claim, necessarily creates an issue of material fact as to whether Northwestern Mutual had a "good faith belief" that Langdon might be entitled to the proceeds, which in turn creates an issue of material fact as to whether Northwestern Mutual retained a good faith belief that it even faced competing claims.

    a.    ***Maddux* is Factually Inapt and Is Not Instructive to This Situation Because The Competing Claims in *Maddux* Were Based on Legal Issues Regarding Divorced Spouses, and Other Interpretation of Specific Policy Terms. *Maddux* Does Not Relieve the Insurer from Its Conduct in Mishandling the Policy, Failing to Investigating the Validity of the Competing Claims, or Destroying the Key Original Document.**

Misapplying *Maddux*, Northwestern Mutual contends that "an insurer does not breach an insurance contract when it retains a good faith belief that it faces the possibility of competing claims and thereby interpleads the disputed funds with a court of law." MSJ at 5:25-28, *Maddux v. Philadelphia Life Ins. Co.*, 77 F. Supp. 2d 1123 (S.D. Cal. 1999). While this is a correct statement as applied to the facts in *Maddux*, it is taken entirely out of context and is inapplicable to the present case. In *Maddux*, at issue was the "direct conflict between Oklahoma and Kansas law (not to mention California law) on the issue of whether a former spouse, even when named as an express beneficiary, [was] entitled to insurance proceeds after divorce from the insured." Additionally, there were "also direct and serious conflicts of interpretation within the terms of the insurance policy itself. In one section, the policy states that

beneficiaries may only be changed by the policyholder in writing. However, another section of the policy states that a beneficiary deemed to have predeceased the insured causes the benefits to pass to parties other than the original beneficiary." *Id* at 1129.

Indeed, in *Maddux,* implicit in the reasoning of the Court as to why it was appropriate for the insurance company to interplead the funds was the fact that the insurance company independently evaluated and investigated the claim. The *Maddux* Court noted that the insurance company's evaluation of the claim was in fact the correct determination.

No such issues are present in this matter. Northwestern Mutual has stated that the Plaintiffs are the beneficiaries. There are no discreet areas of law and contract interpretation present in this claim. Instead, there is merely the unsubstantiated claim of a third party that the change of beneficiary was invalid—for amorphous and inexplicable reasons, and even clearly irrelevant reasons (e.g., that Cole was allegedly heavily medicated *after* surgery, when Northwestern Mutual was well aware of the fact that the change of beneficiary was executed and received by them *prior* to surgery.)

In other cases cited by Defendant to support its contention that interpleader releases it from liability, the party interpled the funds based on multiple parties who each had ***valid*** competing claims to the funds and were seeking payment of those funds at the exclusion of the other party. Therefore, the claims were competing not in the respect that one frivolously challenged the validity of the other (as in the present matter), but rather, both claims were validly made against a set amount of money. See *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329, 1341 (2001). (competing claims" against an excess insurance policy made by two individuals who were both injured in a car crash). See also *Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 69 (competing claims made by five individuals who were

injured in a car crash).

### b. Northwestern Never Investigated the "Competing" Claims

There is no evidence that Northwestern Mutual did anything to investigate the claims. In fact, the evidence shows that when provided with information that would resolve any "issues" with the claim, Northwestern Mutual deferred to Plaintiffs to resolve the matter or face the funds being interpled with the court. When presented with the contact information for the physicians and nurses who treated Cole during her hospitalization, instead of investigating the claim, Northwestern Mutual refused to do so. Within days after receiving this letter from plaintiffs, Northwestern Mutual had informed Plaintiffs' counsel that Northwestern Mutual would consider nothing, make no investigation and no assessment, and would not even discuss Langdon's claims with Plaintiffs. (Wolf Declaration, Exhibit 4). Concurrently, Northwestern Mutual wrote to plaintiffs that "they would be happy to review any written statements [they] are able to obtain from [these] sources." (Please refer to the March 20, 2008 Letter from Northwestern Mutual attached as Westphal Decl. Exhibit 9)

Plaintiffs thereafter submitted a declaration from Jacquelyn Damarjian and a letter from Dr. Chang, but within days thereafter, Northwestern Mutual again indicated to Plaintiffs' counsel that Northwestern would not consider this information, or anything further. (PGI 33)

An insurer owes a duty to the insured and beneficiaries to promptly investigate and resolve the claim in order to promptly pay benefits due under the claim. In this case, Northwestern Mutual, after providing false and misleading information to Langdon thereby prompting the filing of a dispute of the claim, took its own interest above those of the Plaintiffs by interpleading the funds instead of investigating the claim, all done in an attempt to absolve itself of liability. This is clearly a breach of its duty under the contract to administer the file reasonably, and

to promptly pay the benefits under the claim.

### c. Northwestern Mutual Ignored All the Direct Evidence Provided By Plaintiffs To Support the Claim And Never Attempted to Correct or Resolve the Blatant Errors And Omissions It Made

In the letter dated February 24, 2008, Langdon stated the following:

> "I, RYAN C. LANGDON, am the NAMED BENEFICIARY on this policy. This was verified to me by Jilian Walker, the agent of record (License #0764626), at approximately 11:00 AM, February 20, 2008, less than 24 hours after the death of the above named policy holder."

In the follow up letter from Langdon's counsel dated March 5, 2008, it was stated that :

> "This letter shall serve to confirm our several conversations regarding the fraudulent Change in Beneficiary (that your office received in February 18, 2008, and acknowledged on February 21, 2008, two days after Kay Cole died, that the policy's effective date of change is January 12, 2008) on the above referenced policy."

Northwestern Mutual knew and knows that this information was false, and that the true facts were that the Beneficiary Designation had been received by Northwestern Mutual on February 13, 2008. Northwestern Mutual knew that the information it had provided to Langdon and her counsel was erroneous. Yet, Northwestern Mutual did absolutely nothing to even acknowledge – let alone resolve—the wrong information that it had given to Langdon which created the problem[1].

Northwestern Mutual told Plaintiffs' counsel that Northwestern would not make any assessment regarding the "competing" claims. Plaintiffs' counsel wrote to Northwestern Mutual, See Wolf Declaration, Para. 7, Ex. 4. Plaintiffs provided Northwestern Mutual with the most dispositive information regarding the change of beneficiary executed by Cole and Cole's competency on the date in question.

Plaintiffs are unaware of any information that was provided by Langdon or

---

[1] This may explain why Northwestern refused to discuss with Plaintiffs' counsel, as early as April 9, 2008, the facts underlying Langdon's claim. See Wolf Declaration, Para 7, Exhibit 4. It was not until later that Plaintiffs' counsel learned that Northwestern had given incorrect information to Langdon. Wolf Declaration

LAW OFFICES
WOLF GROUP L.A
ELLEN K. WOLF, PROFESSIONAL CORPORATION
11400 WEST OLYMPIC BOULEVARD
SUITE 200
LOS ANGELES, CALIFORNIA 90064

investigated by Northwestern Mutual that contradicts the validity of the claim. Even if said information is now forthcoming, it is clear that this information was not utilized in the evaluation of the claim prior to the funds being interpled. Based on the foregoing, there are issues of material fact as to whether Northwestern Mutual's failures in handling the claim and not resolving issue it created with the claim breached its duties under the contract, both stated and implied.

### d. Northwestern Destroyed Cole's Original Signature Within Days of the Change of Beneficiary and Most Likely After It had Notice of Langdon's Dispute About the Legitimacy of the Change in Beneficiary Form

Far from fulfilling its duty to thoroughly investigate the claim in order to promptly pay benefits, Northwestern Mutual further breached its duty to the Plaintiffs by destroying the original change of beneficiary form which contains the original signature of Cole. "Within days of the deceased's death, prior beneficiary Landgon had made a claim to the Policy proceeds." In spite of this challenge to the claim, Northwestern Mutual, for reasons unknown, destroyed this original change of beneficiary form, a form it received only weeks earlier.

The parties did not know the form was destroyed when Langdon's counsel told Plaintiffs' counsel that examination of the original document could persuade Langdon to drop her claim to the policy. Only upon requesting the original document from Northwestern Mutual was Plaintiffs' counsel advised that the original had been destroyed.

Clearly an issue of fact exists as to whether Northwestern Mutual's conduct in destroying the original change of beneficiary form, in the midst of a disputed claim charging "fraud" or "forgery", is a breach of its duties under the contract.

### e. In Spite of Admitting That Plaintiffs are the Beneficiaries, Defendant Northwestern Mutual Has Not Paid the Benefits to the Beneficiaries

12
REVISED OPPOSITION TO DEFENDANT NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Under the Policy.**

Finally, there is an issue of material fact as to whether Northwestern Mutual, breached the contract by failing to promptly pay the benefits where there is an admitted beneficiary by Northwestern Mutual. There is no dispute that Plaintiffs are the present beneficiaries on the policy. There is no dispute that the policy change was effectuated on February 13, 2008. There is no dispute that Northwestern Mutual provided false information to Langdon regarding the status of the claim. There is no dispute that this false information prompted Langdon to dispute the beneficiary designation for the Policy. There is no evidence that Northwestern Mutual ever investigated the claim and therefore, there is no evidence that supports Northwestern Mutual's contention that it maintained any good faith when it interpled the Policy proceeds. As such, on this basis alone, summary judgment should be denied.

**B. BY NORTHWESTERN MUTUAL'S CONDUCT AS DESCRIBED ABOVE, THERE IS AMPLE EVIDENCE SUPPORTING ISSUES OF MATERIAL FACT REGARDING WHETHER NORTHWESTERN MUTUAL HAS BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING**

The covenant of good faith and fair dealing, implied in every insurance contract, prohibits each party from doing anything to injure the other's right to receive benefits under the agreement. *Schwartz v. State Farm Fire and Cas. Co.*, 88 Cal.App.4th 1329, 1335 (2001). As identified in detail above, Northwestern Mutual's actions have injured the Plaintiffs, the beneficiaries of the policy, and have precluded Plaintiffs from receiving benefits due and owing under the policy. Based thereon, there are ample issues of material fact which make summary judgment inappropriate as to whether Northwestern Mutual breached the covenant of good

faith and fair dealing.

# V.
# CONCLUSION

Summary judgment in favor of Northwestern Mutual is inappropriate based on the facts of this case. Northwestern Mutual is attempting to extract itself from a disputed claim that it, in essence, helped create by giving Langdon erroneous information, refusing to investigate even on clear merits, and making it more difficult to resolve by destroying the original document in question. By handling of the claim in the manner that it did, Northwestern Mutual is liable both for breach of the contract and breach of the implied covenant of good faith and fair dealing. These breaches by Northwestern Mutual are not absolved by Northwestern Mutual simply interpleading the funds after the fact, as it would like the Court to believe. As such, Plaintiffs respectfully request that Defendant's Motion for Summary Judgment be denied in its entirety.

DATED: August 4, 2008

WOLF GROUP L.A.

By: _____
Ellen Kaufman Wolf
Christoper B. Good
Attorneys for Plaintiffs and Counter-Defendants-In-Interpleader Amy Alcini, Christopher Cole, Katy Cole & Jonathan Cole